IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-CV-21-RJ

SEAN BARRAGAN,

Plaintiff/Claimant,

v.

ORDER

FRANK BISIGNANO,
*Commissioner of Social Security,*

Defendant.

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-10, -12, -13]. Claimant Sean Barragan ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing further responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on May 26, 2023, alleging disability beginning November 7, 2022. (R. 17, 159–65). His claim was denied initially and upon reconsideration. (R. 17, 61–83). A telephonic hearing before an Administrative Law Judge ("ALJ") was held on December 4, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 31–60). On January 16, 2025, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–30).

On February 18, 2025, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

### IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 19). Next, the ALJ determined

3

Claimant had the severe impairments of degenerative disc disease, other and unspecified arthropathies, obesity, adjustment disorder, and attention deficit hyperactivity disorder, as well as the non-severe impairments of obstructive sleep apnea, hypercholesterolemia, pre-diabetes, hyperglycemia, hyperlipidemia, and elevated blood pressure without diagnosis of hypertension. (R. 19–20). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitation in understanding, remembering, or applying information; a mild limitation in adapting or managing oneself; and a moderate limitation in interacting with others and in concentrating, persisting, or maintaining pace. (R. 21). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that he had the ability to perform light work[1] with the following restrictions:

> he can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; can never climb ladders, ropes, or scaffolds; can maintain attention sufficient to perform simple, routine, and repetitive tasks in an 8-hour workday; and can have occasional interaction with supervisors, coworkers, and the public.

(R. 21–26). In making this assessment, the ALJ found that Claimant's statements about his limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 22). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a physical therapy assistant or athletic director. (R.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

26). Nevertheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he can perform. (R. 26–27).

## V. DISCUSSION

Claimant argues that the ALJ erred by failing to address the supportability and consistency factors when evaluating the opinion of consultative examiner Anne Monte-Parker, FNP. Pl.'s Br. [DE-10] at 4–10; Pl.'s Reply [DE-13]. The Commissioner contends that substantial evidence supports the ALJ's evaluation of Monte-Parker's opinion and the decision as a whole. Def.'s Br. [DE-12] at 6–11.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more

5

persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §

404.1520c(c)(1)–(5). The most important factors are supportability and consistency. *Id.* §

404.1520c(a).

Monte-Parker conducted a consultative examination of Claimant and issued a medical

report dated December 16, 2023. (R. 323–29). The report documented, in relevant part, that

Claimant alleged disability due to back pain, right hip tendonitis, right knee problems, and sleep

apnea; he had a history of back pain since 2010, secondary to knee surgery; his back-related

symptoms were nerve pain, bilateral leg weakness, chronic pain, and aches; his symptoms were

exacerbated by daily activity and alleviated by resting and repositioning; his pain was 8/10 most

days; he reported his symptoms affect his ability to lift over 50 pounds, to stand for long periods

of time, and to perform tasks; his bicep tendon was repaired in 2019; his typical daily activities

were cooking, doing housework, taking care of children, shopping, sweeping, washing the

dishes, driving, and caring for pets; on examination he demonstrated palpable muscle spasms to

the lumbar region, 4/5 muscle strength in his right arm, and tenderness at L5; he was able to

carry light objects, was unable to squat and rise, and was able to rise from a seated position but

had difficulty getting up and down from the exam table; and range of motion was normal

throughout. (R. 323–28). Monte-Parker concluded as follows:

> The claimant has moderate limitations with sitting due to lumbar pain. The claimant has moderate limitations with standing and walking due to pain. The claimant does not need an assistive device with regard to short and long distances and uneven terrain. The claimant has moderate limitations with lifting and carrying weight due to pain and weakness. There are limitations with bending and stooping and the claimant will be able to perform these occasionally due to pain and stiffness. There are limitations with crouching and squatting and the claimant will not be able to perform these due to pain. There are limitations with reaching and the claimant will be able to perform this occasionally due to pain. There are no limitations on grasping, handling, fingering and feeling. There are no relevant visual or communicative limitations. There are relevant workplace environmental

6

limitations due to difficulty standing and sitting for long periods of time.

(R. 329). The ALJ considered Monte-Parker's opinion and found it to be "unpersuasive" because the "the exertional and environmental limitations are not expressed in vocationally relevant terms, as the language used does not adequately articulate the limitations for use in a residual functional capacity assessment." (R. 25).

Claimant acknowledges Monte-Parker's opinion that Claimant has "moderate limitations" with sitting, standing, and walking and "relevant workplace environmental limitations" is not stated in vocationally relevant terms, but correctly points out that the limitation to "occasionally" performing the postural activities of bending, stooping, and reaching is vocationally relevant. Pl.'s Br. [DE-10] at 8–9. Therefore, Claimant argues, the ALJ should have considered the consistency and supportability of the relevant portion of the opinion, and the failure to do so was harmful because the RFC contained no limitation on reaching, and each job the ALJ found at step 5 that Claimant could perform required frequent reaching. *Id.* at 6–7, 9–10. The Commissioner counters that there are no subjective statements or objective evidence in the record to support a limitation to occasionally reaching rendering any error by the ALJ harmless, and the ALJ's reasoning in finding the opinion unpersuasive can be gleaned from other portions of the ALJ's decision demonstrating the opinion was neither consistent nor supported with the totality of the evidence. Def.'s Br. [DE-12] at 8–11. Claimant, in response, characterizes the Commissioner's position as impermissible *post hoc* rationalization and asserts that the ALJ's error was harmful. Pl.'s Reply [DE-13].

The court agrees with the Commissioner that, even assuming the ALJ erred by failing to discuss the supportability and consistency of Monte-Parker's opinion with respect to the reaching limitation, the error was harmless because the record, as thoroughly discussed by the ALJ, is

7

devoid of any evidence that Claimant required such a limitation rendering remand futile. First, the ALJ summarized Claimant's testimony from the administrative hearing at which Claimant indicated he suffered from pain and weakness in his back and lower extremities that limited his ability to walk or sit for extended periods, but he did not mention any deficit in his ability to reach. (R. 22, 36–52). The ALJ also summarized Claimant's treatment records, including that he regularly reported some back and knee pain at routine visits, but he sought treatment for worsening low back and leg pain and weakness in June 2024; in July 2024 he sought treatment for his low back and related pain at the VA; and in August 2024, an MRI showed mild to moderate degenerative findings at multiple levels, he was referred to physical therapy but it was cancelled after the scheduler was unable to contact Claimant, and there was no record of Claimant following up for additional treatment since that time. (R. 23, 263, 272, 344–48, 366–67, 378–83, 401–18). While Claimant suggests that the MRI results and Monte-Parker's examination results where Claimant demonstrated several deficits (antalgic gait, muscle spasms to the lumbar region, 4/5 muscle strength in his right arm, right hip, and right leg, tenderness at L5, unable to squat and rise, and difficulty getting up and down from the exam table) support a reaching restriction due to back pain, Pl.'s Br. [DE-10] at 7–8, there is simply nothing in the record indicating that Claimant's back pain actually limited his ability to reach.

The ALJ also noted the examination findings of Monte-Parker in an earlier section of the RFC discussion, and directly after explained that,

> given the objective evidence including the MRI and physical exam findings
> described above, the medical record supports a residual functional capacity for
> light exertion with additional postural limitations. Greater restrictions are not
> supported due to the lack of treatment for the claimant's back and knee
> complaints during the period at issue until mid-2024 and minimal conservative
> treatment thereafter; due to the claimant's lack of follow up for physical therapy
> in August 2024; and due to the claimant's activities of daily living including

8

caring for his young kids when his wife works out of town; co-babysitting his granddaughter a few times a week; and cleaning the house, preparing meals, and picking up after the kids. (4F.)

(R. 24). The ALJ's decision indicates a thorough consideration of Claimant's testimony and treatment records related to Claimant's back pain, and the court can trace the ALJ's reasoning in not including further RFC limitations, including with respect to reaching. *See Boulden v. O'Malley*, No. 24-1414, 2025 WL 48337, at \*4 (4th Cir. Jan. 8, 2025) (rejecting argument that ALJ's supportability and consistency analysis was insufficient because he cited only one exhibit out of a 3,600-page record, where the court's review of the record indicated normal examinations in treatment notes, and "the ALJ *did* cite significant other record evidence elsewhere in his opinion, making clear he reviewed the record closely"). The court cannot find that remand for further consideration of Monte-Parker's opinion, specifically to discuss the supportability and consistency factors, would lead to a different outcome in this case. *See Webb v. Kijakazi*, No. 1:20-CV-714, 2021 WL 5206498, at \*13 (M.D.N.C. Nov. 9, 2021) (finding any error by the ALJ in failing to expressly discuss consistency of medical opinion was harmless where the plaintiff failed to show that "remand for an express discussion of the consistency of Dr. Bolz's opinion with the remainder of the record would lead to a favorable outcome in his case."), *report and recommendation adopted*, 2021 WL 5834407 (M.D.N.C. Dec. 9, 2021); *Dyrda v. Colvin*, 47 F. Supp. 3d 318, 326 (M.D.N.C. 2014) ("[T]he Fourth Circuit has embraced harmless error review of administrative decisions, such that, if an ALJ erroneously considered or failed to consider some evidence, remand is not appropriate unless the claimant was prejudiced.") (citations omitted). Accordingly, because the court can trace the ALJ's reasoning and substantial evidence supports the decision, any error in the evaluation of Monte-Parker's opinion is harmless.

9

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is affirmed.

So ordered, the _20_ day of May, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

10